1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JANIS RENEE SHEARER,

               Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

              Defendant.

CASE NO. 11-cv-05417-BHS-JRC

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

Noting Date: October 26, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 26, 29, 31).

The ALJ rejected evidence from plaintiff's examining doctors without providing specific and legitimate reasons based on substantial evidence in the record as a whole.

1  The doctors' opinions of plaintiff's mental impairments and limitations were rejected

2  improperly in favor of an opinion from a lay, other medical source. Due to the harmful

3  error in the ALJ's evaluation of the medical evidence, this matter should be reversed and

4  remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative

5  proceedings.

6                                    BACKGROUND

7          Plaintiff was born in 1957 and was forty-eight years old on her alleged date of

8  disability onset of October 22, 2005 (Tr. 16, 160). She has past relevant work as a

9  cashier; quality assurance/inspector; sales attendant; waitress; warehouse worker; and gas

10 station attendant (*see* Tr. 23, 210, 238, 276-83). However, she has not had substantial

11 gainful activity since her alleged onset date of October 22, 2005 (*see* Tr. 18). Plaintiff has

12 the severe impairments of depression; post-traumatic stress disorder ("PTSD");

13 degenerative disc disease of the lumbar spine; obesity and bilateral osteoarthritis of the

14 hips (*id.*).

15

16         The ALJ described plaintiff's allegations regarding her mental impairments and

17 her PTSD as follows:

18         The claimant testified that she feels uncomfortable in public and has
           anxiety. She explained that she has daily panic attacks, and that during
19         these attacks she shakes, pulls her hair, or scratches her arms. The
           claimant testified that she shops for groceries, but only if she is with
20         another person. She stated that she has post-traumatic stress and anxiety
           from being abused by her former husband. The claimant also testified
21         that she struggles with her memory and often forgets what she is doing
           or where she is going. The claimant indicated that she is extremely
22         depressed and feels suicidal (internal citation to Ex. 6E).

23

24 (Tr. 21 (*citing* Tr. 220-27); *see also* Tr. 43-46, 48-51).

1       According to plaintiff's function report, she indicated that she prays "for death

2 every night, and when [she] wakes up, [she] ask[s] why, why am I still here, alive" (*see*

3 Tr. 220). Sometimes she "just can't get going, so [she] stay[s] in bed all day" (*see* Tr.

4 222). Plaintiff indicated that she did not like to be around people because they scare her

5 and she then has panic attacks (*see* Tr. 223). Plaintiff also reported experiencing

6 confusion and severe lapses in memory (*see* Tr. 49 ("I went to bed at night, and I

7 remember tossing and turning, and it was like I blinked by eyes, and it's like 2:00 in the

8 afternoon the next day, and I'm outside, and I've got half a bucket full of blackberries,

9 and I don't even remember getting up")). She indicated that although she enjoys doing

10 puzzles and attending church, that she cannot do these things because "I just cannot be

11 around a crowd" (Tr. 51). Plaintiff indicated that the "one time I went to see my mother it

12 was because she had fallen and she needed somebody to sit in the house with her when

13 her boyfriend was gone to call 911 if something happened" (*id.*). According to plaintiff's

14 report to an examining doctor, she does not like to touch things that other people have

15 touched because she gets "feelings off things that other people touch, like their feelings

16 rub off on it" (*see* Tr. 735).

17       Plaintiff's brother-in-law, Mr. William Allen ("Mr. Allen"), provided a lay

18 statement (*see* Tr. 23, 184-90). He indicated that he had known plaintiff since 1969, as

19 she lived in a bedroom in his home (*see* Tr. 184). He indicated that plaintiff stayed by

20 herself most of the day, and that she goes in and lays down in her bed, "bunkering,

21 closing her bedroom door for hours at a time" (*id.*). Mr. Allen described how plaintiff had

22 "nightmares and night terrors and remains awake after waking up multiple times each

night" (Tr. 185). Although Mr. Allen indicated that plaintiff had difficulty with authority figures (*see* Tr. 189), plaintiff indicated that she gets along well with authority because she doesn't "want any more abuse by authority" (*see* Tr. 226). Mr. Allen indicated that plaintiff "distrusts all authority, including government, prior bosses, her sisters and I, all men, parents, teachers, etc." (*see* Tr. 189). The ALJ found that Mr. Allen provided credible statements "to the extent reports of what has been seen and heard are accurate" (*see* Tr. 23).

<u>PROCEDURAL HISTORY</u>

On December 9, 2006, plaintiff protectively filed applications for Title II disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") payments (*see* Tr. 16, 150-78). Her applications were denied initially and following reconsideration (Tr. 74-80, 85-89). Her requested hearing was held before Administrative Law Judge Richard Say ("the ALJ") on February 9, 2010 (Tr. 33-64). On March 12, 2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 13-25).

On April 15, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court in June, 2011 seeking judicial review of the ALJ's written decision (*see* ECF Nos. 1, 3, 9). On January 27, 2012, defendant filed the sealed administrative transcript ("Tr.") regarding this matter (*see* ECF Nos. 17, 18). In her Opening Brief, among other issues, plaintiff raises the specific issues of whether or not the ALJ evaluated properly the

medical opinions of three examining medical sources and whether or not he evaluated properly plaintiff's credibility and testimony (*see* ECF No. 29, p. 2). Plaintiff clarifies for the Court that she challenges only the ALJ's assessment of her psychological impairments in this appeal (*see id.*).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

1993)). In the context of social security appeals, legal errors committed by the ALJ may

be considered harmless where the error is irrelevant to the ultimate disability conclusion

when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at

*24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S.

396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1.  **The ALJ failed to evaluate the medical evidence properly**.

The ALJ must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

a treating or examining physician's opinion is contradicted, that opinion "can only be

rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v.

Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of

the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849

F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence

presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1  1984) (per curiam).  The ALJ must only explain why "significant probative evidence has

2  been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

3          An examining physician's opinion is "entitled to greater weight than the opinion

4  of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also*

5  20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may

6  not constitute substantial evidence by itself sufficient to justify the rejection of an opinion

7  by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations

8  omitted). "In order to discount the opinion of an examining physician in favor of the

9  opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate*

10  reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*,

11  100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20

12  C.F.R. § 404.1527(d)(2)(i) (when considering medical opinion evidence, the

13  Commissioner will consider the length and extent of the treatment relationship).

14          The ALJ gave the opinion by non-examining, medical consultant, Dr. Cynthia

15  Collingwood, Ph.D. ("Dr. Collingwood") significant weight (*see* Tr. 20, 23). The ALJ

16  indicated generally that her analysis was "consistent with the other evidence," although

17  the ALJ did not specify any other evidence consistent with Dr. Collingwood's opinion

18  (*see* Tr. 20, 23). Therefore, the ALJ's determination to give Dr. Collingwood's opinion

19  significant weight, in of itself, does not entail specific and legitimate reasons to discount

20  the opinions of plaintiff's examining doctors. An examining doctor's opinion is "entitled

21  to greater weight than the opinion of a nonexamining" doctor. *See Lester, supra*, 81 F.3d

22  at 830 (citations omitted). In addition, the ALJ did not rely explicitly on Dr.

Collingwood's opinion when evaluating the medical opinion evidence offered by

examining doctors, Drs. Joseph and Ragonesi, discussed further below. *See Bray , supra*,

554 F.3d at 1226-27 (*citing Chenery Corp*., 332 U.S. at 196 ("[l]ong-standing principles

of administrative law require us to review the ALJ's decision based on the reasoning and

actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit

what the adjudicator may have been thinking")).

Dr. Colin R. Joseph, Ph.D. ("Dr. Joseph") examined and evaluated plaintiff on

August 19, 2008 (*see* Tr. 729-36). Dr. Joseph indicated that "consistent with her

presentation at the time of the previous evaluation, [plaintiff] appeared anxious, rocked

back and forth in her chair and fidgeted with her fingers throughout the evaluation (*see*

Tr. 734). He indicated that plaintiff demonstrated constricted affect and "was anxious

throughout the interview and, as during the previous evaluation, exhibited constant motor

movement" (Tr. 735).

Dr. Joseph noted that at his evaluation of plaintiff, "she refused a casual

handshake and avoided eye contact during the interview" (Tr. 735). She exhibit delayed

memory difficulties, recalling only one out of three words following a brief delay (*see*

*id.*). He indicated in his summary and conclusions that plaintiff's "presentation remains

highly suggestive of a personality disorder" (*see* Tr. 736). He opined that plaintiff's most

prominent issue with respect to productive work "would likely be related to

characterological issues" (Tr. 736). He explained that plaintiff "would be prone to be

overly demanding, become involved in personal conflicts and frequently feel victimized"

(*id.*). Dr. Joseph further opined that plaintiff "continued to exhibit reduced cognitive

functioning, and it is unlikely that she could maintain the required attention and concentration. She would not be able to maintain emotional stability" (*id.*). Regarding Dr. Joseph's specific opinion of plaintiff's functional limitations, he opined that plaintiff suffered from marked limitation on her ability to function in a work environment in several areas of social functioning, such as her ability to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; and to respond appropriately to and tolerate the pressures and expectations of a normal work setting (*see* Tr. 731).

Similarly, Dr. Amanda J. Ragonesi, Psy.D. ("Dr. Ragonesi") examined and evaluated plaintiff on August 10, 2009 and opined that plaintiff likely would not be able "to function appropriately in a typical work setting" (*see* Tr. 727; *see also* Tr. 719-28). Dr. Ragonesi observed that plaintiff "was restless and fidgety throughout the evaluation [and] rocked in her seat and rubbed her arms when describing prior relationship difficulties" (Tr. 727). Like Dr. Joseph, Dr. Ragonesi opined that plaintiff suffered from marked limitation in her ability to function in a work environment regarding her ability to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; and to respond appropriately to and tolerate the pressures and expectation of a normal work setting (Tr. 722). Dr. Ragonesi concluded that plaintiff's "preference for social isolation, low self-esteem, as well as fears of rejection and judgment are likely to negatively impact her ability to maintain appropriate social behavior" (Tr. 727). According to Dr. Ragonesi, plaintiff "is prone to respond to minimal stress with fears of criticism, and feelings of worthlessness and guilt, [which] in turn, is likely to interfere

1   with her ability to exercise judgment and maintain concentration necessary for

2   completing work related tasks" (*id.*).

3        The ALJ gave one reason for his failure to credit all of the opinions of both

4   examining doctors, Dr. Ragonesi and Dr. Joseph: that Advanced Registered Nurse

5   Practitioner J. River Gaynor ("Nurse Gaynor") had indicated in the treatment record that

6   plaintiff had experienced improvement (*see* Tr. 22). The ALJ did not cite any other

7   evidence in support of his rejection of the examining doctors' opinions. In addition, as

8   part of the "purpose of the contact" section of Nurse Gaynor's treatment record, found by

9   the ALJ to demonstrate improvement, plaintiff had indicated that she was "having some

10  increasing anxiety" (Tr. 687).

11

12       An ALJ must explain why his own interpretations, rather than those of the doctors,

13  are correct. *See Reddick, supra*, 157 F.3d at 725 (*citing Embrey*, *supra*, 849 F.2d at 421-

14  22). Here, the ALJ failed to explain adequately why he rejected the examining doctors'

15  opinions in favor of an opinion from another medical source. *See id.*  In addition, the

16  opinions of examining doctors "can only be rejected for specific and legitimate reasons

17  that are supported by substantial evidence in the record." *See Lester, supra*, 81 F.3d at

18  830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043).

19       The Court has reviewed the relevant record, including the medical evidence and

20  opinions of examining doctors as well as the opinions of lay sources, such as other

21  medical evidence provided by Nurse Gaynor. Based on the Court's review of the relevant

22  record, the Court concludes that the ALJ committed harmful legal error when he rejected

23

24

the opinions of examining doctors in favor of an opinion of another medical source without providing any additional explanation or citation to substantial evidence.

2. **Plaintiff's testimony and credibility should be evaluated anew following remand of this matter**.

A determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). This Court already has determined that the ALJ failed to evaluate properly the medical evidence, *see supra*, section 1. Therefore, plaintiff's testimony and credibility must be assessed anew following remand of this matter.

3. **This matter should be reversed and remanded for further proceedings**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 12

1   *Harman, supra*, 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th
2   Cir.1996)).

3
4       Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.
5   Furthermore, the decision whether to remand a case for additional evidence or simply to
6   award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683,
7   689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.
8   1988)).

9
10      The ALJ is responsible for determining credibility and resolving ambiguities and
11  conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998);
12  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).   If the medical evidence in the
13  record is not conclusive, sole responsibility for resolving conflicting testimony and
14  questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th
15  Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing
16  Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

17
18      Therefore, remand is appropriate to allow the Commissioner the opportunity to
19  consider properly all of the medical evidence as a whole and to incorporate the properly
20  considered medical evidence into the consideration of plaintiff's credibility and residual
21  functional capacity. *See Sample, supra*, 694 F.2d at 642.

22
23
24

For the reasons stated and based on the relevant record, the Court concludes that this matter should be reversed and remanded to the Commissioner for a *de novo* hearing and a new decision.

CONCLUSION

The ALJ inappropriately failed to credit fully opinions from examining doctors that were consistent with other opinions from examining doctors and were consistent with the record as a whole. The ALJ instead favored a treatment note from an Advanced Registered Nurse Practitioner that included both an implication that plaintiff was experiencing improvement and included plaintiff's report that she was experiencing increasing anxiety. The ALJ's explicit rejection of consistent reports from multiple examining doctors in favor of an ambiguous treatment record from another medical source was harmful error.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

1   Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

2   matter for consideration on October 26, 2012, as noted in the caption.

3        Dated this 5th day of October, 2012.

4

5

6        _____

7        J. Richard Creatura
         United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 15